Good morning to everyone. We are now set for argument in the case of State of California v. Philip Del Rosa et al. I believe that Mr. Hennessey is representing the appellants. Mr. Hennessey, you have 15 minutes. Did you want to try to reserve any portion of that for rebuttal? Yes, Your Honor, about five minutes. Okay, we'll try to remind you, but keep your eye on the clock if you will, please. I will, thank you. Very well, please proceed. Good morning, Your Honors. May it please the Court. In this case, the State of California is trying to shut down an Indian tribal government business enterprise and have the tribal government's chairman and vice chairman be held personally liable to pay the state potentially millions of dollars in damages and penalties because the state contends that state laws subject the on-reservation transactions between tribal businesses to state taxes and regulations. The tribal government officials, on the other hand, have determined that the reservation-based value in their products and the important interests of the tribes involved in regulating the businesses of business that they conduct on their reservations free from state interference means that the under federal law, the state's laws do not apply. Let me ask you this. I thought was going to come later in your argument, but you're alleging that your clients conducted themselves in a particular way, but the complaint alleges that your clients sold cigarettes off the reservation and to non-tribal members. Isn't it established by the Supreme Court's case in Moe and Chevaoui Indian tribe in our decision in Yakima that it is lawful for states to impose taxation and record-keeping requirements in those circumstances? A couple of things there, Your Honor. I think what the complaint alleges is that Azuma, my client, was making sales, yes, off of their reservation, but on different reservations. But to non-tribal members? No, to tribal members only, to retailers. I thought the complaint alleged to non-tribal members as well. I believe what the allegations are is that Azuma is making sales to business, to retailers that are owned by Indian tribes on those Indian tribes reservations, and that those retailers then make sales to non-members. So basically, I gather you're contending that, in that circumstance, let's just take a hypothetical. Your client sells to another Indian tribe retail operation, and let's say that one million non-tribal members purchase cigarettes from that outlet without paying any tax. Is that okay under Moe and other Supreme Court law? It may or may not be. We would contend that what you have to do to figure out whether it's okay is to apply the BRAC or balancing test in that case. So, Counsel, following up on Judge Smith's question, your view, I take it, is that we, when this came to us the first time, and we said the prohibited delivery provision applies here because Azuma is on the non-compliant list, and the tribal retailers that operate smoke shops without remitting taxes or holding the requisite state licenses are consumers under the PAC Act, that we got it wrong? No, Your Honor. Although, let me rephrase that. I think you got it wrong, but that's not the point of this appeal. Whether you got it wrong or not doesn't affect our chances on this appeal and the outcome of this appeal. The reason for that, mainly, is that so this issue, this Indian law issue, and BRAC or non-compliant, and the standard of proof in the qualified immunity context is different from the standard of proof in the preliminary injunction context. So, even if the court decided, as it did, that the state has a likelihood of success on the merits, that doesn't mean that, at the same time, the court can't decide that qualified immunity bars that claim, that very same claim, against these defendants. Mr. Hennessey. I can say, let's go to the qualified immunity issue. You put a lot of store on that. Can you point to any case where qualified immunity was successfully invoked in an enforcement action brought by a state pursuant to federal law? No, Your Honor. So, you're basically asking us to create a new category of qualified immunity? Well, this is a case of first impression. I wouldn't say it's a new category of qualified immunity. It's the same qualified immunity that applies to individual rights cases, which is where it typically comes up. Those are almost all civil rights cases, are they not? That's correct. And this is not a civil rights case, is it? No, I wouldn't call it that. I mean, although, you know, one could characterize the rights that the state is espousing as its own, as constitutional rights, say it's constitutional right to, you know, exercise its jurisdiction within its borders, even in Indian country. That's really more of a power, isn't it? I mean, this doesn't fit well within any of the categories where we or any court, as far as I can tell, have recognized qualified immunity. They talk about constitutional or statutory rights, but I think as Judge Smith says, that's usually discussing, you know, Fourth, Fifth Amendment, Fourteenth Amendment by means of Section 1983 and maybe some other civil rights statutes. But I don't know how you would frame, even if we accept that the PACT Act is a statute in the contemplation of the doctrine that the state is enforcing a right as opposed to its taxing power. All of that is correct. I agree with all of that. This is different from any case that's come before, except in the sense that the defendant is a government public official, three public government officials. And the same fundamental policy that is underlying qualified immunity in all of civil rights cases and that gives public officials immunity from individual claims supports qualified immunity from other types of claims like this one. Well, I guess you're taking your brief cites lots of the reasons for the rule that the Supreme Court has arrived at with respect to qualified immunity. And again, because it's either an interpretation of Section 1983 or a judicially derived doctrine, I think we should be careful. We have to look before we leap about extending it. But in terms of understanding that qualified immunity, I mean, isn't that the work of traditional intergovernmental immunities, which you've already enjoyed vis-a-vis the tribe? It's not really, I mean, qualified immunity is really about an official, you know, a person on behalf of the tribe. All of those reasons for respecting the dignity of the tribe as a sovereign, you've already prevailed on those grounds with respect to the sovereign immunity question. I mean, so why isn't this all the job of the intergovernmental immunities that have already been addressed by the district court? Why do we need to add qualified immunity on top of it when there are no individual rights at stake? That's a good question. I mean, I think that in the past, a suit against a public official for personal damages might have been defended on the basis of sovereign immunity. But the Supreme Court has since made clear in cases like Lewis v. Clark that you have to differentiate suits against the individual from, you know, personal capacity suits by looking at the relief that's requested. And depending on the relief requested, you go to sovereign immunity or individual immunities like qualified immunity. And so that's where we find ourselves because of the relief that's being requested. Counsel, if we were to hypothetically say maybe qualified immunity could apply here, hypothetically, I have a lot of trouble understanding your client's argument that they weren't on clear notice that their conduct violated the law. I have the same view that was expressed by Judge Smith in his question about what the Supreme Court has said, about what our court has said. The United States has clearly said you guys are violating the law. The state of California has clearly said you're violating the law. I think decisions in this case have said that. Even if qualified immunity applied here, why isn't the law very clear that your clients can't do what they are alleged to be doing? The reason is that both qualified immunity and the BRCA balancing test require looking at the specific particular factual circumstances of the case. And so the cases that the state cites and that you're probably thinking of where the balance has come out a certain way against tribes and in favor of state power, they came out that way because of the balance of the particular interests and the relative weight of those interests in each case. You're not answering my colleague's question. He has pointed out that your clients were repeatedly told they were in violation of the law, repeatedly, by a variety of persons and governmental agencies, and yet they persisted in doing what they're doing. His argument, I gather, is on the second prong. If we even recognize there is such a thing as qualified immunity here, you lose on the second prong, do you not? The state telling us that we're violating the law doesn't count. The ATF telling us that we're violating the law doesn't count. You're saying it has to be a court order? Yes. Not necessarily a court telling us specifically, but a court decision that clearly establishes that under these circumstances, when the interests are the same and the weight of the interest with respect to one another is the same so that the balance would come out the same way and the balance favors the state, that clearly establishes what the contours of the law are in a particular circumstance. Only a court order could reach that level of notice from your perspective. In circumstances like this, yes. I mean, not universally. Sometimes that's not necessary. In other qualified immunity cases, if it applies, we do typically look for a court decision and say that lesser guidance isn't enough, but even on those grounds, this is coming to us on a motion to dismiss. And the bracker balancing doesn't seem like, if it's fact specific, it doesn't seem like it's susceptible to the posture of a qualified immunity appeal from denial of a motion to dismiss. In other words, we'll see excessive force cases where the defendants will say, you know, the Fourth Amendment analysis is much different. It turns out that the decedent had a weapon. Well, that's not something we can do at a motion to dismiss. We have to take the allegations as true and read them in the light most favorable to the plaintiff. So why isn't, even if you get a bracker balancing test, something, a question for down the line of summary judgment when we have more of a record? Well, that may be. I think that it is possible to look at this case, since it so heavily involves the bracker that test makes it inherently insusceptible to clearly established rules, unless we can say that the conduct that's been alleged in the complaint is so much like, essentially, almost exactly like what happened in a case like, say, Moe or Colville. Well, then what the answer may be is that allegations like this cannot survive qualified immunity because of the inherently hazy gray area field of law that you have to deal with. On the other hand, that's not necessary to conclude this appeal and to reverse the court below because the court didn't get to any of those issues. The district court ended the analysis at the threshold, like we've said in our brief. So if you decide that the defendants here can assert qualified immunity, that's as far as you need to go, and you can reverse and remand for further proceedings on whatever facts happen to develop. Now, you've used up a fair amount of your rebuttal time. We'll see whether the court has additional time in addition to what you have left, but I assume you want to save what you have here. Is that correct? Yes, I better. Thank you. Okay, very well. All right. So, Mr. Nosenzi, representing the state, please. Good morning, and may it please the court, Peter Nosenzi on behalf of Appalooza State of California. Congress, concerned with evasion of state, local, and tribal cigarette laws, passed the PACT Act of 2009, and in doing so, it incorporated those cigarette laws into federal law and provided additional enforcement mechanisms to states, localities, and tribes to enforce those laws. The application of state law to tribal cigarette sales is well-trod, and decades of precedent make clear what cigarette businesses must do in Indian country. Defendants' business, however, is premised on not doing those things, and the PACT Act, aimed precisely at such unlawful actions, permits both the state's ex parte young claims aimed at preventing future violations and the state's personal capacity claims aimed at holding those personally responsible liable for past violations. So, I'd like to talk about three things. First, generally what the PACT Act did, its innovation over its predecessor, the Jenkins Act. Second, how the PACT Act expressly allows for ex parte young actions. And then finally, how defendants' appellants' contention that they couldn't possibly know what the law requires of them simply doesn't accord with the facts of the case. So first, the Jenkins Act preceded the PACT Act, and what the PACT Act did was it expanded the Jenkins Act in three ways. It required everyone to report sales into states, so it used to be just a subset of transactions. It expanded reporting specifically to include tribal sales, sales into and out of tribal businesses, and it expanded the definition of consumer to include all businesses that are not lawfully operating. So what it did by expanding that definition is that it imposed specific requirements on all sales unless to an entity that is complying with all relevant cigarette laws. And so those three expansions are almost all directly related to this case. It's specifically addressing the kinds of violations that we're seeing here. Mr. Nishenzi, you say with respect to the ex parte young, I think at note five of your brief, you note that the court has not reached the question of ex parte young on state law grounds against tribal officials. Sounds like by the rest of your brief, we don't really need to reach that, right, if this is coming to us strictly as an application of ex parte young under the PACT Act, and you're going to amend with respect to the state claims in the district court? Correct. Do we need to reach that question? We've just got this square application of ex parte young on federal law grounds to tribal officials. Correct. And I think that this court does not need to reach that issue. As I stated in my introduction, the PACT Act incorporated those state laws into federal law, so it's federal law violations. But to the extent that there's any question about the expansion of authority over the state, there's some relevance there. But I agree this is purely federal law, and this court doesn't have to reach that issue. But continuing on in the ex parte young area, the PACT Act specifically imported the background law of sovereign immunity into the PACT Act itself. It didn't want to upset the balance, it didn't want to change the contours of sovereign immunity, so it just imports that background law into the PACT Act. That background law includes ex parte young actions for violations of federal law against tribal officials. And so the PACT Act has imported that specific mechanism into the PACT Act. And I think it's important here to also compare with the other causes of action that are in the PACT Act. Just to take you back on that first point, Mr. Nishinzi, with respect to whether there's a detailed enforcement scheme, I believe the defendants point to C2 that talks about the evidence provision that a state or attorney general may provide evidence of a violation by any person not subject to state, local, or tribal government enforcement. I think the state's response to that then is that, well, that goes to areas where a tribe might have sovereign immunity. But usually we don't like to, when Congress means tribes or tribal officials, we kind of expect them to say it. And this does seem to provide a separate vehicle, maybe not exclusive, but separate for any person who's not otherwise subject to enforcement. Why doesn't that help the defendant's case? Well, I think it's important to look at 378D and compare that to 378C1. So the cause of action that's given to the state is very broad. It's any appropriate relief against any person. 378D, on the other hand, provides a cause of action to certain private plaintiffs, and they can only obtain injunctive relief. And the cause of action there is against any person other than a state, local, or tribal government. So those two provisions right next to each other, I mean, it's statutory construction 101 that you can't just read that clause out of the statute, especially when it's right next to a provision that says essentially the same thing but does not include that caveat. And so that any person language has to do something. And by importing Ex parte Young, the background sovereign immunity principles, into the law, that is precisely what Congress must have intended by not giving that carve out to the state and their cause of action. Mr. Nischenzi, could I turn to qualified immunity, which I think, as you saw, is of some concern here. It's interesting, right, because here we have two sovereigns, and we have a state that's arguing against the application of sovereign immunity or qualified immunity when oftentimes it's turned. I mean, I guess I'm trying to think about if the tables were turned here, and if a tribal or federal government was seeking to enforce a statute against a state official, why wouldn't California always throw up a defense of qualified immunity if it was going after a state official in their personal capacity for some violation of a statute that might remotely be framed as a right? Well, I think it has to do with, I think primarily here is what is the standard for qualified immunity. And then here, the lack of clarity that that appellants are claiming is. Well, and I'm asking about the credit. I mean, it's interesting, you kind of buried the whole question about the applicability of qualified immunity at all at page 40 of your brief after explaining the primary argument that it doesn't apply, but it's jurisdictional. And so maybe we can assume that it applies. Maybe we can't, but I'd like to hear your response to whether qualified immunity as a doctrine, would it ever have application to a sovereign if the tables were turned and it was a California official in their personal capacity who was sued for a violation of a regulatory statute like this? Sure. I think it goes to burden. I think that the burden is on the person asserting the qualified immunity applies and the district court found that the defendants did not meet the burden of showing that sovereign immunity or excuse me, qualified immunity applied in this instance. So I think that's where the issue really lies is in the person asserting it in the specific context has the burden of asserting it. And I think it really comes down to the, what is being, what the scope of the immunity is being asserted, right? Like the standard for when a law is unclear, Lanier makes clear that what it is, is importing that the unconstitutionally vague criminal statute standard into civil law. So, I mean, here it's a, it's a unique circumstance where you have a specific statute that delineates out precisely what is prohibited and what is not. And I mean, in those, in that circumstances, qualified immunity simply doesn't apply. There's, there's no room for, for the question of how, how it applies in this instance. And, you know, combined with the decades of, of precedent on the, the question of cigarette sales in Indian country. I want to go back a little bit. My colleague has raised the qualified immunity question at a higher level. I want to get back to something that judge Mueller did, which was specifically to say that qualified immunity is inapplicable here because it's a state enforcement action, not a private plaintiff trying to vindicate rights. But your appellate brief doesn't seem to follow that at all. Is it because you disagree with the district court's reasoning about whether qualified immunity could apply in this circumstance under any circumstance? Yeah, I think, yes, I think it again goes back to burden. It's, I don't, I don't read the district court's opinion. Burden or inability to apply the doctrine at all when it's a state enforcement action? Well, I read the district court's opinion as saying that appellants had not, or defendants had not shown that qualified immunity applied, not that it was a blanket statement that it could never apply in such circumstances. So that's why I'm going back to burden. I think that in this case, defendants have not met the burden of showing that applies to statutory enforcement actions like this one. And so I think to continue on the qualified immunity question and to pick up what your honor was saying earlier about whether the law is clearly established. I mean, here, the state has told defendants that their business is unlawful. ATF has told them their business is unlawful. The district court told them their business was unlawful. And yet, but they claim there's no court, if you will, decision that requires them to obey. Are they correct that that's what's required to establish notice in a qualified immunity context? No, I don't believe so. Again, I think the standard is what is established in Lanier. And again, it goes to burden is that you have to show in a statutory enforcement action that the law is so vague that it would be constitutionally infirm if it were a criminal statute. And that sort of accords with your mine run 1983 case where it's just a violation of rights and those rights need to be elucidated further, whereas here we have a clear statutory dictate from Congress combined with decades of precedent addressing this very specific question of what must. Mr. Nishenzie, on the decades of precedent, I guess, are you aware of any other state that has sued tribal officials in their personal capacity under the PACT Act? Because we had trouble identifying what the precedent is. And I understand the defendant's argument to be that that's kind of embedded in the clearly established analysis too. Is there precedent on this kind of case? No, I am unaware of any case where state has made personal capacity claims against a tribal official for PACT Act violations. But I think, again, to the burden, and it's a statutory cause of action that delineates out the question, the dictates of what is allowed and what is not. And so, you know, I don't think there needs to be any specific statutory interpretation or court order on this issue. What about the Brecker balancing? There's some note of this in our prior memorandum disposition. We don't have the facts. We have allegations about vast quantities of cigarettes and sales to outlets. For example, there's no record made yet in terms of how integral to tribal sovereignty some of the secondary outlets that are receiving the cigarettes may be. You know, it may be that the state's right on that, but this is a motion to dismiss and the court's told us that Brecker is specific. So I take your point that on a motion to dismiss, we usually aren't going to contest your allegations. But to say that Brecker balancing never enters into the equation in any circumstance, just because one or two cases have established in those circumstances that the geography allows the application, is that a little too far? Well, I think there's a couple of things there. First, on the question of the posture and the facts, if you read Appellant's brief, it boils down to there's a balancing test, therefore qualified immunity. There is no specific facts that are alleged or pointed out, or there's no specific fact that they point to that would bring their business or their customer's business out of those prior decisions. And I think also when you look at what those prior decisions addressed, Colville in particular, where the Supreme Court said that the minimum burdens analysis applies to sales to, I notice that my time is up. Yeah, you could finish answering Judge Johnstone's question. Thank you. So the court in Colville found that minimal burdens applied even to sales to members that are untaxed, and even if a business claims only to make untaxed sales. And sales on a reservation to your own members is the apex of tribal sovereignty. There's no greater confluence of interest where tribal sovereignty could be greater. And so if minimal burdens apply at that point, well, then I'm unsure what facts even could be brought into the equation that would mean that minimal burdens would not apply. Perhaps taxes could be not owed, but the minimum burdens analysis in Colville, in Moe, in Mill all state that the state can put minimum burdens specifically on untaxed sales in order to make sure that those sales are actually not taxable. And do either of my colleagues have additional questions for Mr. Nosenzi? No. All right. Thank you very much, Mr. Nosenzi. Mr. Hennessey, you have a little time and we'll probably have some additional questions, but please proceed. All right. Thank you, Your Honor. I did want to address one or two things quickly, if I could, about the ex parte young issue, which I didn't get to the first time around. It's significant that before the PACT Act incorporated state law into the federal statute, there was previously no federal statute that would have allowed the indirect enforcement of state cigarette laws through ex parte young under the longstanding ex parte young rule that that allows actions for injunctive relief for ongoing violations of federal law. So what Congress had in mind with the provision that we're relying on here in the PACT Act, because of the way the PACT Act is structured, the fact that it incorporates state law, this became a new possibility, right, that the states might be able to leverage the PACT Act as a way to seek injunctive relief for violating federal law. And Congress wanted to say, no, we're going to keep things status quo. We don't want to statutorily open that door to states to have that power. And it's similar to what they did in Section 5 of the PACT Act, which has provisions saying federal Indian law remains status quo. We're not giving states extra substantive regulatory power through this statute. Whatever regulatory power they had before remains the same. I think they wanted to do the same thing with respect to enforcement power. Let me ask my colleague, you're over time, but we can ask you questions. So let's see whether any of my colleagues has additional questions for Mr. Hennessey. I don't. Nor do I. Very well. Well, thanks both counsel for your argument and very, very helpful. The case just argued is submitted and the court stands adjourned for the day and the week for that matter. Thank you. This court for this session stands adjourned.
judges: SMITH, BENNETT, JOHNSTONE